### KELLY v. BATTLE ISLAND PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1907.)

MASTER AND SERVANT—INJURIES TO SERVANT—MASTER'S LIABILITY.

Where a servant was injured by the fall of a platform supported by an acid tower which defendant was razing, and the fall was the direct result of the weakening of the tower by taking it down, defendant's liability could be predicated only on negligence in the conduct of the work, and not on a failure to provide a safe place under Employer's Liability Act, Laws 1902, p. 1748, c. 600, creating a liability for injuries to a servant resulting from defects in the master's work; the master not being bound to guard against dangers incident to the work of razing structures.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 200, 207.]

Appeal from Trial Term, Oswego County.

Action by Daniel W. Kelly against the Battle Island Paper Company. From a judgment on the verdict in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes, it appeals. Reversed on the law and the facts.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Mead, Stranahan & Guile and Irving G. Hubbs, for appellant.
Newell, Chapman & Newell, for respondent.

WILLIAMS, J. The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide event.

The action was brought to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The accident in which the injuries were received occurred in the taking down of an acid tower, 24 feet square and originally 125 feet high. At the time of the accident it had been taken down to about 75 feet from the ground. The plaintiff was employed as a laborer in the work. He fell from the tower, and one of his fingers was injured. The case was submitted to the jury under Employer's Liability Act, Laws 1902, p. 1748, c. 600. The court charged the jury that the tower and its surroundings might be considered as a part of the works of the defendant under the act. It was claimed that the injuries were the result of a defect in the condition of such works, which arose from, or had not been discovered or remedied owing to, the negligence of the defendant, or a person in its service intrusted with or exercising superintendence of the work. The court charged specifically that the defendant was obliged to furnish the plaintiff a reasonably safe place to perform his labor, and if it failed in this duty it was guilty of negligence, and if such negligence caused the accident and injuries there could be a recovery, so far as this branch of the case was concerned. There was more or less evidence relating to an iron rod, which it was claimed was, or should have been, in the frame to support the timbers that gave way, and the failure to have this rod there, or to have it properly secured, was the particular ground of negligence complained of. The tower was strong enough as it stood before the upper part of it was taken away, but it became weakened and insecure by reason of the removal of parts of it in the process of taking it down, until the floor on which plaintiff was working gave way and fell, causing the plaintiff's injuries. The plaintiff claimed there never was an iron rod in the frame, and for this reason the place was not reasonably safe to work in. The right to recover was made to depend, under the charge, upon the question whether the place was a reasonably safe one, by reason of the absence of the rod; it never having been put in, when the tower was constructed or afterwards. This theory of the submission of the case was duly excepted to, and its correctness challenged by various requests, refusals, and exceptions, at the close of the charge.

It seems to us the judgment and order cannot be sustained upon such a theory. We are not called upon to say whether a recovery might be sustained under the evidence because of negligence of the superintendent in failing to inspect the works as the taking down of the tower proceeded, and in discovering the danger and warning the plaintiff of such danger, and in providing against the same. The case was not submitted upon any such theory. No such question was left to the jury. Since the trial of this case the Court of Appeals has declared the law relating to questions here involved in Citrone v. O'Rourke Eng. Const. Co., 188 N. Y. 339, 80 N. E. 1092, and in that case the court said:

"It is apparent from * * * all the * * * evidence in the case relating to the character of the work and the manner in which it was being conducted, that, whatever was the danger to which the men were exposed, it

was due to the manner in which the work was prosecuted.   Under such circumstances the rule of law which makes it incumbent upon an employer to provide or maintain a safe place in which his employés are to do their work has no application.  As was said by Mr. Justice Cullen in O'Connell v. Clark, 22 App. Div. 466, 48 N. Y. Supp. 74, the principle of a safe place does not apply, where the prosecution of the work itself makes the place and creates its danger.  And the same judge held, in Stourbridge v. Brooklyn City R. R. Co., 9 App. Div. 129, 41 N. Y. Supp. 128, the rule that the master must provide a safe place for work only applies where the place and the work are not connected, where the work is not in the construction of the place, as in the case of a mill, a factory, mine, ship, well, etc."

In Thompson's Commentaries on the Law of Negligence, vol. 4, § 3979, it was said:

"The work of tearing down an old building is necessarily attended with danger, which arises in the progress of the work and which the master cannot anticipate and provide against.  Therefore it has been held that the rule which makes it incumbent upon a master to provide his servants with a safe place within which to work does not apply to such situation.  * * *  In the destruction of a building, there is no attempt or obligation on the part of the master to make it secure; but, on the contrary, the work of removal is one in which in turn each part of the structure becomes insecure.  This every workman understands, and he must be governed accordingly.  * * *"

The real question, if any, in this case, was not one of negligence in failing to furnish a safe place to work, but of negligence in the conduct of the work, and this latter question was not submitted to the jury.  The floor that fell was perfectly safe until the supports were removed in the taking down of the tower.  It had sustained the weight of tons of stone.  It was unusually strong and secure before the supports were removed.

The judgment and order should be reversed upon the law and the facts.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide the event.  All concur.